FILED
VANESSA L. ARMSTRONG, CLERK
JUN 01 2015
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

UNITED STATES OF AMERICA

**INFORMATION**

vs.

**RAMIRO PENA JR.**

NO. 5:15CR17-R

18 U.S.C. § 201(b)(2)
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

The United States Attorney for the Western District of Kentucky and the United States Department of Justice, Criminal Division, Fraud Section (collectively referred to as the United States), charge:

**Introduction**

At all times material to this Information, unless specific dates are otherwise noted:

1. From on or about January 1, 2008 to on or about September 30, 2009, defendant **RAMIRO PENA JR.** worked as an United States Army Sergeant First Class at the Humanitarian Aid Yard ("HA Yard") at Bagram Airfield in Afghanistan ("Bagram"). At the HA Yard, **RAMIRO PENA JR.** was assigned as a Project Purchasing Officer ("PPO"). **RAMIRO PENA JR.**'s duties at the HA Yard included maintaining the supply orders and making sure the inventory levels were never low. As an Army Sergeant First Class and PPO, **RAMIRO PENA JR.** was a "public official" within the meaning of Title 18, United States Code, Section 201(a)(1). Before and after his deployment, Pena resided at Fort Campbell, Kentucky, located in the Western District of Kentucky.

2. The HA Yard purchased supplies from local Afghan vendors that were then provided as part of the Commander's Emergency Response Program. That program enabled

1

U.S. military commanders to respond to urgent humanitarian relief requirements in Afghanistan, and the projects were intended to benefit the local populace in areas such as agriculture, education, health care, and sanitation until larger, more formal reconstruction projects could be initiated.

3. **RAMIRO PENA JR.**'s supervisor at the HA Yard was Army Master Sergeant Jimmy W. Dennis ("Dennis"), charged elsewhere. Dennis was the Army Paying Agent at the HA Yard. Dennis and **RAMIRO PENA JR.** worked as a team to procure supplies for the HA Yard by issuing contracts to local Afghan vendors for those supplies. Two Afghan interpreters assisted Dennis and **RAMIRO PENA JR.** in their interactions with the Afghan vendors. Between on or about June 5, 2008 and on or about March 21, 2009, Dennis and **RAMIRO PENA JR.** processed approximately 217 contracts worth approximately $30,760,255 for Afghan vendors to provide supplies to the HA Yard.

4. Both Dennis and **RAMIRO PENA JR.** received money and jewelry from the vendors in return for their official acts on the HA Yard contracts. **RAMIRO PENA JR.** received his money primarily through Dennis. Initially, Dennis told **RAMIRO PENA JR.** that he would pick up defendant's laundry and deliver it to him. Although **RAMIRO PENA JR.** knew it was wrong to accept the money, he continued to accept future cash payments from the vendors through Dennis.

5. **RAMIRO PENA JR.** received about $100,000 from Dennis in approximately six installments. Dennis also gave **RAMIRO PENA JR.** a Rolex watch, which was provided by a vendor seeking to obtain HA Yard contracts.

6. **RAMIRO PENA JR.** sent approximately $22,000 of the bribe money home in Hallmark cards addressed to his wife, who resided at Fort Campbell, Kentucky. He sent

approximately $300 to $400 home at a time. **RAMIRO PENA JR.** only put three to four bills in each card at a time so as to not bring attention to the envelope at the post office.

7. Before **RAMIRO PENA JR.** returned to the United States, Dennis made a $5,000 down payment on a Harley Davidson motorcycle for **RAMIRO PENA JR.** at a dealership in Tennessee. In or about May 2009, when **RAMIRO PENA JR.** returned to the United States, Dennis and **RAMIRO PENA JR.** picked up the motorcycle and transported it to **RAMIRO PENA JR.**'s home at Fort Campbell, Kentucky. Thereafter, **RAMIRO PENA JR.** paid off the remaining amount owed on the motorcycle, in part using some of the bribe money he received in Afghanistan. **RAMIRO PENA JR.** would use the bribe money he received from the vendors through Dennis for **RAMIRO PENA JR.** and **RAMIRO PENA JR.**'s family's personal expenses in Afghanistan and the United States.

## COUNT ONE

8. The United States hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in the Introduction portion of this Information.

9. From on or about January 1, 2008 to on or about September 30, 2009, within the Western District of Kentucky and elsewhere, **RAMIRO PENA JR.** knowingly and willfully conspired, confederated, and agreed with others known and unknown to the United States, including Dennis, to commit an offense against the United States, namely bribery, in violation of 18 U.S.C. § 201(b)(2), by agreeing among themselves and others for **RAMIRO PENA JR.** to receive and accept illegal bribes from Afghan vendors in return for being influenced in the performance of an official act, that is, ensuring the successful approval and processing of contracts to restock supplies at the HA Yard at Bagram.

## MANNER AND MEANS

10. The manner and means by which Dennis, **RAMIRO PENA JR.**, and others would and did carry out the conspiracy included, but were not limited to, the following:

    a. Dennis would select Afghan vendors to provide supplies to the HA Yard, and then have **RAMIRO PENA JR.** successfully process the resulting contracts between the U.S. Army and the respective vendor.

    b. Dennis would receive money and jewelry from the Afghan vendors, a portion of which he shared with **RAMIRO PENA JR.**, in return for being listed as a contractor eligible to provide supplies to the HA Yard and successfully processing the resulting contracts.

## OVERT ACTS

11. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in Afghanistan and in the Western District of Kentucky:

    a. In or about summer 2008, **RAMIRO PENA JR.** received a $5,000 bribe payment from a vendor, through Dennis, in return for processing contracts to replenish supplies at the HA Yard.

    b. In or about late 2008, **RAMIRO PENA JR.** received a Rolex watch from a vendor, through Dennis, in return for processing contracts to replenish supplies at the HA Yard.

    c. In or about late 2008, **RAMIRO PENA JR.** mailed to his wife in the Western District of Kentucky a Hallmark card which contained three to four $100 bills in it from the bribe money he received from the vendors.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION UNDER
## 28 U.S.C. § 2461(c) AND 18 U.S.C. § 981(a)(1)(C)

12. The violation alleged above in Count One of this Information is realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

13. Upon conviction of the offense alleged in this Information, the defendant, **RAMIRO PENA JR.**, shall forfeit to the United States any interest he has in property, real or personal, constituting, or derived from, proceeds traceable to the conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371, including, but not limited to:

   a. $100,000 in U.S. Currency, which represents the sum of money equal to the amount of proceeds derived from or traceable to the conspiracy to commit bribery, in violation of 18 U.S.C. § 371;
   b. a 2009 Harley Davidson motorcycle (VIN: 1HD1GY4189K326341); and
   c. a Rolex watch, Presidential 18K yellow gold tone face and hands with diamond numerals (Serial Number: M483562; Model Number: 118348).

14. If any of the property described above as being subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to seek the forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Criminal Forfeiture, pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

Respectfully Submitted,

"for" *Bryan Calhoun* (signature)
JOHN E. KUHN, JR.
Acting United States Attorney
Western District of Kentucky

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

UNITED STATES OF AMERICA v. **RAMIRO PENA JR.**

## PENALTIES

Count 1:  5 yrs./$250,000/both/Not more than 3 yrs. Supervised Release
Forfeiture

## NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

|  | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due <u>immediately</u> unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

**INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

> For offenses occurring after December 12, 1987:
>
> No **INTEREST** will accrue on fines under $2,500.00.
>
> **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.
>
> **PENALTIES** of:
>
> 10% of fine balance if payment more than 30 days late.
>
> 15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

> If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or
> **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other Penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

LOUISVILLE:   Clerk, U.S. District Court
              106 Gene Snyder U.S. Courthouse
              601 West Broadway
              Louisville, KY  40202
              502/625-3500

BOWLING GREEN:   Clerk, U.S. District Court
                 120 Federal Building
                 241 East Main Street
                 Bowling Green, KY  42101
                 270/393-2500

OWENSBORO:   Clerk, U.S. District Court
             126 Federal Building
             423 Frederica
             Owensboro, KY  42301
             270/689-4400

PADUCAH:   Clerk, U.S. District Court
           127 Federal Building
           501 Broadway
           Paducah, KY  42001
           270/415-6400

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.